## Frankel v. Arch Street Corp.

454

*Frank Bielitsky,* for plaintiff.
*Albert C. Gekoski,* for defendant.

KELLEY, J., October 20, 1964.—This matter arises on defendant's motion for judgment on the pleadings. This case must be approached in the light of the well-established principle that a summary judgment should be entered on the pleadings only in a case that is clear and free from doubt: Dilks v. Flohr Chevrolet, 411 Pa. 425, 430 (1963) ; Rogoff v. Buncher Co., 395 Pa. 477, 480 (1959). It appears from the pleadings that plaintiff is the lessee of the first floor store of the premises located at 1232 Arch Street, Philadelphia, Pa. Defendant is owner and lessor of this store. Plaintiff is engaged in the business of buying and selling business machines. When he opened his place of business on October 30, 1963, he found steam and water escaping from a heating radiator located within the store. This condition had existed over the weekend during which time the store was closed. As a result, plaintiff's stock was rusted and damaged by the steam and water.

The complaint alleges negligence of defendant's employe. Defendant pleads an exculpatory clause in the lease which it alleges releases it from liability. In reply, plaintiff avers that the exculpatory clause should be held invalid and that the lease imposes a duty upon defendant to supply heating and that this provision makes defendant liable in damages for failure to supply heat as a result of gross negligence. A protective clause in a lease, whereby a tenant agrees to release a

landlord from liability for nonwillful injury, commonly referred to as an exculpatory clause, is valid and enforcible if it does not contravene any policy of law, that is, if it is not a matter of interest to the public or State, but merely an agreement between persons relating entirely to their private affairs: Dilks v. Flohr Chevrolet, Inc., supra; Cannon v. Bresch, 307 Pa. 31 (1932).

Generally, such a clause is effective to release a landlord from liability to his tenant. However, certain standards have been established which must be met before an exculpatory provision will be interpreted and construed to relieve a landlord of liability for his own or his servant's acts of negligence. In Dilks v. Flohr Chevrolet, supra, the Pennsylvania Supreme Court stated:

"The principle which underlies all these cases is that, where a person claims that, under the provisions and terms of a contract, he is rendered immune from and relieved of any liability for negligent conduct on his part or on the part of his employees, the burden is upon such person to prove (a) that such contractual provisions and terms do not contravene public policy and (b) that the provisions and terms of the contract clearly and unequivocally spell out the intent to grant such immunity and relief from liability. Absent such proof, the claim of immunity fails."

In the case at bar, there is nothing to indicate that the public policy of Pennsylvania is contravened. In Boyd v. Smith, 372 Pa. 306 (1950), the failure to have a proper fire escape required by statute contravened public policy, and the court allowed a tenant to recover for personal injury from his landlord in the face of an exculpatory clause. The court stated, at page 309:

"A provision in a contract relieving a person from liability for damages resulting from his own negligence is invalid where it contravenes the policy of a police

measure intended for the protection of human life; in such event public policy does not permit an individual to waive the protection which the statute is designed to afford him."

One of the averments in plaintiff's reply is that defendant's negligence constitutes a violation of the ordinances of the City of Philadelphia. In Harris v. Greenberg, 17 D. & C. 2d 166 (1958), plaintiff suffered personal injuries alleged to be caused by a violation of ordinances of Philadelphia "designed to protect the public health, safety and welfare." The syllabus states:

"An averment in a trespass action that a dangerous and defective condition of the stairs and lighting system in defendant's property caused injury to plaintiff-tenant cannot be successfully met by an allegation in the answer that the lease between the parties contained a clause exculpating the landlord from liability for such condition, since such a clause is invalid as a matter of law."

In Maglin v. Weinberg, 21 D. & C. 2d 630 (1959), a similar result was reached when plaintiff was injured when a defective handrail in a fire escape came loose causing injury to plaintiff. The court in Maglin found a violation of an ordinance of the City of Pittsburgh. It is significant that in cases involving the public policy to invalidate leasehold provisions on the basis of statute and ordinances designed "to protect the public health, safety and welfare," the court was concerned with injuries to the person: Boyd v. Smith, supra; Harris v. Greenberg, supra; Maglin v. Weinberg, supra; Felegy v. Pinsker, 104 Pitts. L. J. 73 (C. P. Allegheny County, 1955); Gilpin v. Abraham, 218 F. Supp. 414 (E.D. Pa., 1963).

Generally, in the absence of such public policy considerations, exculpatory clauses in leaseholds have been upheld. Since we find no public policy considerations, we must look to the lease and determine whether the

terms of the contract "clearly and unequivocally spell out the intent to grant such immunity from liability." Paragraph 11 of the lease provides in pertinent parts:

"Lessee agrees to be responsible for and to relieve and hereby relieves the lessor from all liability by reason of any injury or damage to any . . . property in the demised premises . . . caused by any fire, breakage, or leakage on any part or portion of the demised premises, . . . or from water, rain or snow that may leak into, issue or flow from any part of the said premises, or of the building of which the demised premises is a part, or from the drains, pipes, or plumbing work of the same, or from any place or quarter, whether such breakage, leakage, injury or damage be caused by or result from the negligence of lessor or its servants or agents or any person or persons whatsoever.

"Lessee also agrees to be responsible for and to relieve and hereby relieves lessor from all liability by reason of any damage or injury to any person or thing . . . or from any kind of injury which may arise from any other cause . . . whether such damage, injury, . . . be caused by or result from the negligence of lessor, its servants or agents or any other person or persons whatsoever."

The damage to plaintiff's merchandise was caused by steam and water which was released through a defective radiator valve. This clearly falls within the provisions of the exculpatory clause. In Cannon v. Bresch, 307 Pa. 31 (1932), the lease provided that the landlord was not liable for damages "caused by water." The court held that the lessor was not liable, even though the damage resulted from defects of a heating plant on the lessor's premises which caused an overflow into the tenant's premises. See also Siegel Co. v. Philadelphia Record Company, 348 Pa. 245 (1943), where the lessee was denied recovery for water damage because of an exculpatory clause releasing the "lessor from liability

by reason of damage to any . . . property in the demised premises from water . . . , or from pipes or plumbing works . . . , whether such damage results from negligence of lessor . . ." In the case at bar, the lease expresses clearly and unequivocally that the lessor is not liable for water damage and damages caused by drains, pipes and plumbing, even if from the lessor's negligence.

Plaintiff's contention that the damage resulted from defendant's gross negligence in failing to supply heat is without merit. This clause of the lease would allow plaintiff to recover damages for defendant's gross negligence in failing to supply heat. But, nowhere in the pleadings are there any allegations that a lack of heat caused the alleged damage. On the contrary, it is alleged that plaintiff's goods were damaged by steam and water.

This court finds no public policy considerations that would make invalid the protective clause in the lease, and further finds that this clause covers the alleged damage.

Accordingly, judgment is entered for defendant.