**[J-14-2018] [OISA: Baer, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| MICHELE VALENTINO, AS ADMINISTRATRIX OF THE ESTATE OF DEREK VALENTINO, DECEASED, AND MICHELE VALENTINO, IN HER OWN RIGHT, | : : : : : : | No. 17 EAP 2017<br><br>Appeal from the Judgment of Superior Court entered on November 15, 2016 at No. 3049 EDA 2013 affirming the Order entered on September 30, 2013 in the Court of Common Pleas, Philadelphia County, Civil Division at No. 1417 April Term, 2012 |
| Appellant | : : : | |
| v. | : : : | ARGUED: May 15, 2018 |
| PHILADELPHIA TRIATHLON, LLC, | : : : | |
| Appellee | : | |

**OPINION IN SUPPORT OF REVERSAL**

**JUSTICE DONOHUE**                                                    **DECIDED: June 18, 2019**

I join Justice Dougherty's Opinion in Support of Reversal ("OISR") in full. I too disagree with the Superior Court's conclusion that the Decedent's exculpatory agreement may serve as a complete defense to the wrongful death heir's claim against the Triathlon. I write separately to express my view that, in light of the derivative nature of wrongful death actions, the Superior Court was technically correct in its analysis of the mechanical operation of the liability waiver in reaching its conclusion. However, when the mechanical operation of the law works to defeat the purpose of a remedial statute like the Wrongful Death Act, by way of the broad enforcement of a legally disfavored exculpatory agreement, the mechanical operation must yield.

As Justice Dougherty explains, this Court has repeatedly affirmed a requirement that exculpatory agreements must be narrowly and strictly construed because exculpatory language, which purports to relieve a person of liability even when he has negligently caused injury to another, is not favored in the law. OISR (Dougherty, J.) at 10, 13-14 (citing *Employers Liability Assur. Corp. v. Greenville Business Men's Ass'n.*, 224 A.2d 620, 623 (Pa. 1966); *Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1174, 1189 (Pa. 2010); *Topp Copy Prods. Inc. v. Singletary*, 626 A.2d 98 (Pa. 1993); *Dilks v. Flohr Chevrolet, Inc.*, 192 A.2d 682, 687 (Pa. 1963)). Here, Appellant does not challenge the validity or the enforceability of the contractual assumption of risk in the survival action she brought (as administratrix) on behalf of Decedent's estate. Therefore, for purposes of this appeal, the liability waiver is valid and enforceable as a complete defense to the survival action. As between the Triathlon and Decedent, there is a knowing and voluntary agreement to extinguish Decedent's ability to recover for claims of ordinary negligence.

I believe that we must, however, decline to allow the liability waiver to defeat a wrongful death action brought by heirs who never agreed, expressly or otherwise, to eliminate their statutory right to recover for their pecuniary loss resulting from the death of their loved one that, as alleged, was tortious but for the liability waiver. Allowing the liability waiver to defeat the wrongful death action, as the Superior Court did, gives the waiver the broadest possible reading, contrary to our mandate to narrowly construe such provisions. The tenet of strict construction requires that we limit this liability waiver to its narrowest effect: a bar to recovery under the survival action.

Moreover, as noted by Justice Dougherty, for an exculpatory waiver to be valid, it must meet three conditions: it must not contravene public policy, the contract must be

between persons relating entirely to their own private affairs, and each party must be a free bargaining agent to the agreement so that the contract is not one of adhesion. OISR (Dougherty, J.) at 10-11 (citing *Chepkevich*, 2 A.3d at 1177). As to these first two prongs, this Court's decision in *Boyd v. Smith*, 94 A.2d 44 (Pa. 1953), is instructive. In *Boyd*, an agreement between a property owner and a tenant relieved the property owner from liability for any injury occasioned by the property owner's negligence in the maintenance of the leased building. *Boyd*, 94 A.2d at 45. However, pursuant to statute, "no building … shall be used for human habitation unless it is equipped with a fire escape or fire escapes as required by law." *Id.* (quoting 53 P.S. § 3962). The property in question was not equipped with fire escapes. The building caught fire and, unable to escape the building by fire escape, the tenant sustained serious injuries and sued. The property owner attempted to rely on the exculpatory agreement in the lease to avoid liability.

We declined to find the waiver enforceable, explaining:

> Such a protective clause is undoubtedly valid and enforceable if it does not contravene any policy of the law, that is, if it is not a matter of interest to the public or the state but merely an agreement between persons relating entirely to their private affairs. The situation becomes an entirely different one in the eye of the law when the legislation in question is, as here, a police measure obviously intended for the protection of human life; in such event public policy does not permit an individual to waive the protection which the statute is designed to afford him.

*Id.* at 46. We further held, "where the legislature has, by definite and unequivocal language, determined the public policy of this Commonwealth with regard to a particular subject, that pronouncement cannot be set aside and rendered unenforceable by a contract between individuals." *Id.*

We are tasked here with determining the legal effect of a liability waiver upon a third party, not the signatory - a far more extreme reach of the waiver of liability than in *Boyd*. However, as in *Boyd*, the fullest enforcement of the liability waiver would contravene an unequivocal policy determination by the General Assembly, namely that wrongful death heirs are entitled to recover pecuniary losses from the party responsible for their provider's death. *See* OISR (Dougherty, J.) at 9-10, 13.

The Wrongful Death Act, which is remedial in nature and must be construed liberally, assures that surviving heirs do not need to go without financial support nor look to public welfare agencies to shoulder the economic burden of the loss of a provider. *See Kaczorowski*, 184 A. at 665; *see also Gershon v. Regency Diving Center*, 845 A.2d 720, 728 (N.J. Super. App. Div. 2004) (observing that, "in many wrongful death cases the decedent was the 'breadwinner' and the heirs are children, incompetents or those otherwise economically dependent on the decedent"). Notably, in the case at bar, Decedent was a forty-year-old husband and father of two who worked full-time for United Parcel Service and part-time as a licensed realtor. *See* Appellant's Response to Triathlon's Motion for Summary Judgment at 2.

Allowing the Triathlon to use Decedent's waiver of liability to defeat a wrongful death claim would require us to ignore clear public policy embedded in the wrongful death statute and our laws governing decedents more generally. Analogously, the General Assembly has for centuries prohibited spousal disinheritance by will in order to ensure the surviving spouse's financial security after the decedent's death. *See In re Houston's Estate*, 89 A.2d 525, 526 (Pa. 1952); *see also* 20 Pa.C.S. § 2203 (authorizing a surviving spouse to take against the will an elective share of one-third of the deceased's property,

subject to certain exceptions, thereby ensuring the surviving spouse's right to some inheritance). Thus, a married individual cannot eliminate his spouse's statutory entitlement, even through an attempted disinheritance in a last will and testament. In my view, it is impossible to reconcile allowing a sporting event participant to eradicate a statutory claim for wrongful death damages when he could not accomplish a disinheritance by virtue of a will. For this reason, and because liability waivers are disfavored, I join Justice Dougherty in narrowly construing the liability waiver so that it is enforceable only in the survival action brought on behalf of Decedent's estate, where it was not challenged. *Cf. Tayar*, 47 A.3d at 1203 (curtailing purported effect of waiver on public policy grounds). So construed, it has no effect on the wrongful death action. Like Justice Dougherty, I would decline to give any effect to the Decedent's contractual waiver of the Triathlon's duty of care in the wrongful death action because doing so would implicate public, not merely private, affairs and would contravene the policy set forth by our legislature in the Wrongful Death Act which we must liberally construe. OISR (Dougherty, J.) at 14; *see also Chepkevich*, 2 A.3d at 1189; *Boyd*, 94 A.2d at 46.